WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jie Xia, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Harrah's Arizona Corporation,<br><br>    Defendant. | No. CV-23-02086-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Harrah's Arizona Corporation's Motion to Dismiss (Doc. 11). For the reasons detailed below, Defendant's Motion is denied.

**BACKGROUND**

The Plaintiffs in this matter are five individuals—Jie Xia, Necy Sundquist, Mary Grace Abon, Susan Samons, and Maria Henry—who each allege Defendant violated various federal laws, including 42 U.S.C. § 1981 and provisions of Title VII, when it terminated Plaintiffs' employment. Plaintiffs are all non-white, female former employees of Defendant. (Doc. 1 at 2–3).

Defendant is a Nevada corporation that, pursuant to a management contract with the Ak-Chin Indian Community ("Community" or "Tribe"), operates and manages the Ak-Chin Casino and Resort in Maricopa, Arizona. (*Id.* at 2, 9). The Community is a federally recognized Indian tribe. (Doc. 11-1 at 2). In the Summer of 2022, Harrah's added an electronic craps game called Roll To Win to the casino floor. (Doc. 1 at 3). Roll To

Win automated many functions of a traditional craps game, requiring the employee running it to merely input the results of dice rolls. (*Id.* at 3–4). Defendant believed that, due to the automation, Roll To Win required less training to operate and, as a result, employees were sometimes tasked to operate Roll To Win despite the game not being part of their regular rotation. (*Id.* at 4). Plaintiffs were five of such employees. (*Id.* at 6).

Over time, Defendants became aware that the Roll To Win tables, as operated, were vulnerable to various cheating strategies used by certain gamblers. (*Id.* at 5). After identifying these strategies, Defendant initiated an investigation which identified between thirteen and nineteen table dealers who were working the Roll To Win tables while cheating occurred. (*Id.* at 6). Plaintiffs allege they received specific written guidance on how to manage the Roll To Win tables only after Defendant completed its investigation. (*Id.*). After Defendant's investigation, the Ak-Chin Tribal Gaming Agency ("Agency") began the process of revoking Plaintiffs' gaming licenses, during which Plaintiffs were suspended from work without pay. (*Id.*). Plaintiffs allege that Caucasian and male employees who managed Roll To Win tables when cheating occurred were not suspended. (*Id.*). At hearings before the Agency, Defendant argued that Plaintiffs colluded with the cheating gamblers, and made those same representations to tribal police and the FBI. (*Id.* at 7). Despite there being no criminal charges brought against Plaintiffs, all five Plaintiffs were ultimately terminated from their employment. (*Id.* at 8). This was each of Plaintiffs' first disciplinary action; Plaintiffs never received any warning or coaching prior to termination, which are typically given in disciplinary cases prior to termination. (*Id.*). In a separate investigation by the Arizona Department of Gaming ("ADOG"), the ADOG refused to revoke Plaintiffs' gaming licenses and instead determined that cheating occurred because of Defendant's failure to properly train. (*Id.* at 9–10).

On October 5, 2023, Plaintiffs filed this action against Defendant alleging discrimination and retaliation under 42 U.S.C. § 1981, wrongful termination and retaliation under Title VII, and termination in violation of public policy under state law. (*Id.* at 10–15). On December 12, 2023, Defendant filed a Motion to Dismiss solely arguing this Court

lacks subject matter jurisdiction because of the Community's sovereign immunity.

## DISCUSSION

### I. Legal Standard

Federal courts are courts of limited jurisdiction. *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). When subject matter jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that it exists. *Kingman Reef Atoll Invs., L.L.C., v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). Parties may bring either facial or factual subject matter jurisdiction challenges. A facial challenge asserts that the complaint, on its face, fails to allege facts that would invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). A factual attack, on the other hand, disputes the veracity of allegations in the complaint that would, if true, invoke federal jurisdiction. *Id.* When resolving a facial attack on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court accepts the allegations of the complaint as true. *Mason v. Arizona*, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003).

### II. Analysis

Defendant challenges this Court's subject matter jurisdiction by arguing it is protected by the Community's tribal sovereign immunity. "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). Tribal sovereign immunity extends to tribal business activities. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006). Whether a particular business venture enjoys tribal sovereign immunity turns on whether "the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Id.*

> In determining whether an entity is entitled to sovereign immunity as an 'arm of the tribe,' we examine several factors including: '(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.'

*White v. Univ. of Cali.*, 765 F.3d 1010, 1025 (9th Cir. 2014). Accordingly, non-governmental tribal businesses commonly enjoy sovereign immunity. *See Allen*, 464 F.3d at 1047 (holding a casino wholly owned and operated by the Tribe enjoyed sovereign immunity); *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1191–92 (10th Cir. 2010) (holding a Tribal Economic Development Authority, formed under the laws of the tribe, enjoyed sovereign immunity).

Under the above factors, Defendant is not an arm of the Community and, thus, cannot claim the Community's sovereign immunity. First, Defendant is formed under the laws of the state of Nevada, not under the laws of the Community. Second, while Defendant's successful operations results in increased Community funds, Defendant is a for-profit corporation. The profits it generates are not returned to the Tribe, but to the corporate shareholders. While Defendant presumably generates these profits through its expertise in managing and operating the Community's casino, such profits are not the Tribe's. Even though the Community's purpose in contracting with Defendant is to generate revenue for the Tribe, Defendant's purpose is to take a portion of that revenue for its shareholders, which, notably, does not include the Community.

Third, as mentioned above, the Tribe does not own or manage the Defendant. The Community may have leverage over the Defendant in that it can choose to terminate its management agreement with Defendant. The Community also has the regulatory control that any sovereign has over a gaming operation within its sovereign territory. To the extent there is any other direct Community control over Defendant, such control does not rise to such a level so that Defendant is an arm of the tribe.

Fourth, there is no evidence that the Community ever intended to share its sovereign immunity with Defendant. There are no declarations by Community Council, sections of the management agreement, or ordinances that indicate Defendant may use the Tribe's sovereign immunity. Finally, as discussed above, the financial relationship between the Community and the Defendant is clear: The Community pays Defendant to operate and manage the Community's casino using its expert knowledge. For those services, Defendant earns a fee. The Community does not, for example, own any portion of Defendant.

Considering these factors, Defendant is not an arm of the Community. Accordingly, Defendant does not enjoy the Community's sovereign immunity.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Harrah's Arizona Corporation's Motion to Dismiss (Doc. 11) is **DENIED**.

Dated this 10th day of May, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge